[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated May 14, 2001 and returnable June 19, 2001, in which the plaintiff petitioner, Kenneth W. Harmon, sought a dissolution of the marriage, a fair division of property and debts.
The plaintiff was, at the initiation of the complaint and at time of trial, represented by counsel. The usual automatic orders accompanied the complaint. In-hand service was made on the defendant wife on June 7, 2001 according to the return of the marshal. The defendant filed a pro se appearance on June 19, 2001 and on June 26, 2001 the defendant filed an answer to the complaint and a cross complaint and in the cross complaint asked for a dissolution of the marriage, a fair division of property and debts and alimony. The defendant filed a financial affidavit with the court on July 19, 2001 and the Case Management Agreement was filed with the court on October 2, 2001.
On October 10, 2001 the plaintiff filed a financial affidavit with the court and on November 6, 2001 a certain pre-trial agreement was reached by the parties as appears in the file.
It would appear that no pendente lite orders were entered in this matter during its pendency and prior to trial. CT Page 965
The plaintiff husband and his attorney and the defendant, pro se, appeared before the court on January 9, 2002 and the matter was heard to a conclusion.
The court makes the following findings of fact:
The defendant's maiden name was Lisa A. Grabel; the court having granted a motion for correction of the maiden name spelling in the complaint and the middle initial so that it should be accurate. The parties were united in marriage on July 27, 1985 at New London.
The testimony was to the effect by the plaintiff that the parties had lived in Connecticut for more than 12 months prior to the filing of the petition.
The plaintiff testified that the marriage had irretrievably broken down with no reasonable prospect for reconciliation.
The plaintiff testified that there are no minor children issue of this marriage at this time.
The plaintiff testified that any assistance received by the defendant from the State of Connecticut was for a period of time prior to the parties entering into the marital union.
The plaintiff indicated that although he had been born in Lincoln, Illinois that he was pretty much a lifetime resident of this state.
The plaintiff adopted a child of the defendant in September of 1985. The adopted child is now age 19.
The plaintiff's testimony was to the effect that the reason for the breakdown in the marriage was a total lack of communication or the ability to achieve the same between the parties.
The plaintiff claimed that the defendant also was fearful of operating a motor vehicle on the highway and that this created problems with regard to his being unable to visit with members of his family in Illinois.
The testimony by the plaintiff was to the effect that the parties actually separated on September 27, 2000, at which time he left the home and residence of the parties.
The plaintiff's testimony was to the effect that the defendant felt that it was a good idea for the parties to separate. CT Page 966
The plaintiff's present address is 75 Clifton Avenue in the city of West Hartford. He has resided at that address since June of 2001.
The plaintiff is employed at the University of Hartford as a painter. He has been there in this position for only the last two months. Previously, the plaintiff worked as a union painter, oftentimes having no work at all, particularly during the winter time.
The plaintiff's financial situation was to the effect that his debts amount to over $18,000.00± plus an additional $24,000.00 owed on a motor vehicle.
The plaintiff verified for counsel and the court that the figures appearing on his financial affidavit were accurate.
The plaintiff indicated that it is his intention in the near term to file a Chapter 7 bankruptcy petition; the same to be undertaken after the dissolution of the marital union. The plaintiff represented that he has informed his creditors to this effect and that he is endeavoring to set aside or secure the requisite funds in order to have counsel file the bankruptcy petition and accompanying schedules for him.
The plaintiff resides with three other adult parties at the West Hartford address. The parties in the home including the plaintiff are two females and one other male. The plaintiff's testimony was to the effect that the parties are merely friends and that there were no matters of intimacy.
After the initial separation between the plaintiff and the defendant, the plaintiff lived for a time in Montville with a foreman supervisor of his then employment. Subsequently, he resided in Groton and now is in West Hartford as indicated.
The adopted child of the plaintiff is one Nina M. Harmon. The adoption was finalized in May of 1986. As earlier noted, the child is now age 19. She completed high school; is now working at the Crystal Mall and attends hairdressing school. This child had resided with the defendant but recently moved out and has taken a unit of her own in company with a girlfriend.
As indicated earlier, the testimony was to the effect that any welfare assistance that the defendant received was prior in point of time to this marital union.
The plaintiff again, emphasized that in his opinion that the breakdown of the marriage was caused by a lack of communication between the CT Page 967 parties.
The marriage appears to be of approximately 16 years duration. It is the first marriage for both parties. The plaintiff described his health as good. His age is 45. His education extended through securing a G.E.D.
The plaintiff was, during the period 1978-1983, an enlisted rating in the United States Navy. He was an E-3 in the aviation arena working on jet engines while he was assigned to an aircraft carrier.
The plaintiff's lament also was to the effect that the parties have different ideals.
The plaintiff claimed that there were no instances of physical violence between the parties.
The plaintiff did acknowledge that he is a recovering alcoholic and again stated his intention to file a Chapter 7 petition.
The periods of alcohol abuse apparently occurred in 1989 and 1990. The plaintiff's testimony being to the effect that he has been sober since 1990.
The plaintiff indicated that he had endeavored to properly support the adopted daughter. His last contact with the child was in September of 2001.
The plaintiff described the child as being in good health; that the young lady neither smokes nor drinks.
The defendant testified that she has been a resident of the State of Connecticut for the last 40 years. She verified the date and place of the marriage and the correction to her maiden name and middle initial.
It is the defendant's firm claim that the plaintiff has indulged in a variety of affairs with members of the opposite sex; that he has been immoderate in the consumption of alcohol and has abused substances.
In addition, the defendant claims that the plaintiff has had gambling problems and also that he has caused anguish and upset in the marriage by virtue of the type of material that he has secured on his computer.
The defendant testified as to an affair of the plaintiff while in Mississippi.
The defendant stated that she was a practicing Catholic and was CT Page 968 desirous of maintaining and saving the marriage and adhering to her marriage vows. Incident to the plaintiff's problems with regard to gambling, her testimony was to the effect that he took funds from her savings and also from the rent money creating problems in the household.
The defendant testified as to certain illicit sexually oriented material on the plaintiff's computer that need not be dwelt on at any length.
At the time of the plaintiff's father passing away, her claim is to the effect that the defendant had a further affair at that time and that the plaintiff was not at all supportive of her during the September 1999 time frame when a number of relatives passed away.
The plaintiff apparently told the defendant that he was not happy in the marital union and wanted to leave her but waited until the adopted child Nina was over 18 to avoid having to make support payments.
After a while, the defendant declined to share the bedroom with the plaintiff because of the nature of his conduct, sometimes abhorrent and her fear of being the object of physical harm, particularly, when, according to the defendant's testimony, the plaintiff abused substances.
The defendant refuted the plaintiff's claims with regard to her relationship to his family and indicated that she did socialize with them and that the parties had gotten on quite well.
In the defendant's opinion, the causes for the breakdown of the marriage were addictions by the plaintiff to alcohol and substance abuse and his failure to recognize the truth.
There were several occasions according to the defendant's testimony when she was shoved about by the plaintiff and on one occasion that he put his fist through the wall.
The testimony further was to the effect that the plaintiff has been through two rehabilitation programs; the last one being in 1992.
The defendant, incident to her employment, works between 27 and 31 hours a week. Her hourly rate is $10.00. She has collateral benefits incident to her work. She has a number of pets, including six cats and one dog and feels that the plaintiff, in addition to the deterioration of the relationship between the plaintiff and the defendant, has alienated the adopted daughter.
The defendant's age is 46. She described her health as fairly good. She CT Page 969 has a thyroid problem which requires periodic medication. She is afflicted with chronic Lyme Disease, which apparently will be lifetime. Her education extended through completing high school. She is presently employed as a home health aide and is certified as an aide by the State of Connecticut and has been with her present employer for the last two years.
Some small modest income that she had earlier received from her daughter and a daughter's friend as a boarder is no longer available to her.
The debts shown on her financial affidavit she described as being her own.
The defendant resides in a home that she rents. The defendant is desirable of having the court direct the plaintiff to transfer whatever equity interest he has in her present automobile to her in order that she may be the sole equity owner and that she is endeavoring to refinance the same in order to achieve that.
The defendant's request of the court with regard to alimony was to the effect that she was desirous of having $50.00 a week and professed that she has financially scrimped for a long period of time and that, in her words, her life now is merely a survival. No request for resumption of maiden name was made by the defendant.
The defendant's position is to the effect that the plaintiff is capable of outside work in addition to his regular employment, which could materially increase the nature of his income.
The plaintiff's statement to the court was to the effect that he would voluntarily pay $20.00 a week for the period of one year.
From the sole exhibit, the court observes that the plaintiff is employed by the University of Hartford; that he is paid every two weeks. The exhibit reflects that for the period ending December 30, 2001 that his gross for that two week period was $859.25. The net was $473.12.
From the plaintiff's financial affidavit, his employment is verified as being with the University of Hartford as a painter; gross weekly wage, $590.00; total deductions amounting to $156.45 for a net of $433.55. Weekly expenses of $462.00; total debt, $18,642.00; no real estate; a minus equity in a Ford automobile, a 2001 Ford Taurus with a loan balance of $24,000.00; $71.00 in a bank checking account; no other assets.
The defendant's financial affidavit reflects her being employed as a CT Page 970 home health aide for Utopia Home Health Care, Ocean Avenue, New London. Gross weekly wage, $297.25; deductions, $49.32 for a net of $247.93. Other income shown on her affidavit would appear to be a further income from Utopia of $20.50 a week for a total net income of $266.86. Weekly expenses of $473.00; debt of $5,083.49; no real estate; a 1999 Mitsubishi Mirage automobile with about a $3,500.00 equity; $32.00 in the bank; no other assets.
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony.
The court has considered all of the applicable case law that governs the matter.
The court has considered the testimony of the parties, their candor or lack thereof, the one exhibit and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault.
 Discussion
This is the first marriage for both of the parties.
It is a marriage of 16 years.
No minor children presently in the picture. The adopted daughter, as indicated, is now age 19.
The plaintiff's present residence with members of the opposite sex would appear to be inappropriate under the circumstances.
From the testimony it appears that in fact there was a lack of communication with regard to the parties which created problems. CT Page 971
There were also problems on the part of the plaintiff as concerns alcohol, at least in the early years in the marriage, plus an indication of substance abuse by the plaintiff as well, and in addition thereto, gambling and inappropriate sexually oriented material on the computer by the plaintiff.
The plaintiff is age 45. He has a limited education.
The plaintiff apparently is in good health.
The defendant is age 46 and has a thyroid problem.
Both of the parties appear to have substantial debt and very little in the way of assets.
The court enters the following orders:
The plaintiff shall execute whatever document or documents may be necessary or required in order to effect the establishment of the entire equity in the defendant's 1999 Mitsubishi Mirage motor vehicle. The defendant, apparently being engaged in endeavoring to refinance that particular loan and the plaintiff's release or transfer of his equity, is requisite incident thereto.
Each party may retain whatever personal property is presently within their possession and control.
The court grants periodic alimony to the defendant wife in the amount of $40.00 per week for a period of three years. Said alimony to terminate earlier on the death of either party, the remarriage of the defendant or cohabitation with an unrelated male as provided by statute.
There was no request for restoration of maiden name.
The parties own no real estate.
Each party shall be responsible for the debts and obligations shown on their respective financial affidavits.
The plaintiff may retain his interest in his 2001 Ford Taurus motor vehicle.
The plaintiff may retain the computer reflected on his financial affidavit as well as the $71.00 in the Webster Bank checking account.
The defendant may retain the $32.00 in the Charter Oak Federal Credit CT Page 972 Union reflected on her financial affidavit.
The court grants the relief prayed for and dissolves the marriage of the parties and declares the parties to be single and unmated.
Austin, J.